IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| EAGLE WELL SERVICE, INC. d/b/a ) <br> BRONCO ENERGY SERVICES, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CENTRAL POWER SYSTEMS & ) <br> SERVICES, INC., ) <br> ) <br> Defendants. ) <br> ) | CIVIL ACTION <br> No. 08-2184-CM |

**MEMORANDUM AND ORDER**

Plaintiff Eagle Well Service, Inc. d/b/a Bronco Energy Services ("Eagle") brings this lawsuit against defendant Central Power Systems & Services, Inc. ("Central"). This dispute arises from a contract regarding the purchase of engine and transmission units for installation and use on oil and gas well servicing rigs, specifically centering on whether certain items were included in the agreement between the parties. Plaintiff brings claims for breach of contract, fraudulent inducement, and negligence, and, in the alternative, *quantum meruit* and negligent misrepresentation. Defendant asserts counterclaims on the theories of open account and contract for goods. The parties' motions for summary judgment are currently before the court (Docs. 92 & 95).

**I.      Factual Background**

On October 27, 2005, the parties entered into a contract for ten engines and transmissions in exchange for $709,450. The terms of the contract are in dispute. Eagle believes the contract is a "turnkey" transaction, that is, the contract includes all items necessary for the operation of the engines and transmissions. Central believes the contract is limited to the specific items listed in the

contract. In January 2006, the parties met and agreed Central would develop and provide Eagle with transmission wiring harnesses. The parties dispute whether this was part of the original October 2005 contract or another, separate agreement. The parties also dispute whether Central was capable of developing the wiring harnesses. Eagle paid Central $709,450 in March 2006. The parties dispute whether this payment included payment for the wiring harnesses. In September 2006, Central shipped the prototype wiring harness to China for installation on Eagle's rigs. Eventually, Central provided Eagle with ten engines and transmissions, but the wiring harnesses were not included. Central hired United Engines to work on the wiring harnesses; the scope of the work is in dispute. The parties also dispute whether Eagle hired United Engines to work on the wiring harnesses.

## II.   Standards for Judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.   Discussion

### A.  Plaintiff's Motion for Summary Judgment

Eagle seeks summary judgment on (1) each of its breach of contract claims, (2) Central's second counterclaim—contract for goods, and (3) Central's affirmative defense of Statue of Frauds. After reviewing the record and the parties' briefs, the court finds that there are many disputed

-3-

questions of fact. For example, the terms of the contract are in dispute, specifically whether the contract includes the wiring harnesses. The parties also dispute the scope of any agreements with United Engines and the parties to such agreements; Central's ability to provide a workable wire harness; and whether there was a second agreement for the wiring harnesses. These facts are relevant to each of the issues Eagle raises on summary judgment. Thus, due to the multitude of disputed material facts, the court denies Eagle's motion for summary judgment.

### B. Defendant's Motion for Summary Judgment

Central seeks summary judgment on (1) Eagle's breach of contract claim; (2) Eagle's alternative claim of *quantum meruit*;[1] and (3) Eagle's fraudulent inducement claim.

Breach of contract. Central relies on three affirmative defenses to rebut Eagle's breach of contract claim. Central, however, did not assert these affirmative defenses in its answer. In fact, Central did not assert these affirmative defenses until seven days before discovery closed. As explained more throughly in the court's order addressing Eagle's motion to strike these defenses, (Doc. 141), the court has allowed Eagle to conduct limited discovery on these, and other, affirmative defenses. Because Central's late disclosure of these defenses precluded Eagle from conducting discovery on them and having such discovery to respond to Central's motion for summary judgment, the court will not grant Central summary judgment on the basis of these affirmative defenses. Accordingly, Central's motion is denied with respect to Eagle's breach of contract claims.

*Quantum meruit*. Central argues it is entitled to summary judgment on Eagle's *quantum meruit* claim because Central could not have been unjustly enriched when Eagle never paid for the

---

[1] Eagle brings this claim as an alternative claim to the breach of contract cause of action, alleging that Central "retained the benefit of the contract, specifically the payment of over $700,000, but failed to deliver the units as promised. As such, Defendant has been unjustly enriched." (Doc. 98, Pretrial Order at ¶ 6.a.4.)

wiring harnesses. Central further contends that the $709,450 price figure of the October 2005 contract did not include the wiring harnesses. But, like many of the facts in this lawsuit, these too are disputed. Because there are questions of material fact relating to Eagle's *quantum meruit* claim, Central's motion is denied.

Fraudulent inducement. Central seeks summary judgment on plaintiff's fraudulent inducement claim.[2] To prevail on its claim, Eagle must establish by clear and convincing evidence that (1) Central made false representations of existing and material fact; (2) Central knew that the statement was untrue or made it in reckless disregard for the truth; (3) Central made the statement with the intent to induce Eagle to act on the statement; (4) Eagle justifiably relied on the statement to its detriment; and (5) Eagle sustained injury as a result of its reliance. *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 223 F.R.D. 566, 603 n.58 (D. Kan. 2004) (citations omitted); *FDX Supply Chain Servs., Inc. v. N. Face, Inc.*, 98 F. Supp. 2d 1244, 1247 (D. Kan. 2000). Central argues that Eagle cannot establish the first two elements.

Eagle's claim is founded on the allegation that Central represented to Eagle that Central possessed the capabilities to perform the contracted services and provide the contracted goods in a timely manner when Central knew or should have known that it could not. (Doc. 98, Pretrial Order at ¶ 6.a.2.) Specifically, Eagle argues that Central's representatives must have made these statements knowing them to be false or with reckless disregard to their truth because Central had never designed or constructed a wiring harness for the type of engines and transmissions at issue and later admitted that Central's ability to construct the wiring harness was limited. However, the record

---

[2] Eagle contends that Central has untimely raised an affirmative defense. But Eagle did not object to the inclusion of this defense in the pretrial order or in its motion to strike affirmative defenses. Thus, the court will consider this defense.

supports Central's assertion that it believed it could provide the wiring harness and perform the terms of the contract.

Through the affidavit of Harlin Mitchell, Central has presented evidence establishing that, at the time of the agreement, it fully intended to carry out its obligations under the agreement and that it had a good faith belief that it could construct the wiring harnesses. Additionally, as a corporate representative, Jeremiah Krom testified that he believed Central was capable of building the wiring harnesses. The only evidence Eagle cites to refute Central's evidence merely establishes that Central had not built a wiring harness for the exact type of engines and transmissions at issue and that after building two wiring harnesses, Central realized its ability to build the harness was limited. Moreover, the record establishes that the type of engines and transmissions at issue were relatively new and that Central had previously built other wiring harnesses. The evidence does not establish that Central knowingly made false statements about its ability to perform the contract, or did so with reckless disregard to the truth of the statements. Nor does it raise disputed questions of material facts regarding the issue.

Based on the record before the court, Eagle cannot establish that Central made the statements at issue knowing them to be false or with reckless disregard for the truth. Accordingly, Central's motion for summary judgment on Eagle's fraudulent inducement claim is granted.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 92) is denied.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 95) granted in part and denied in part.

Dated this 28th day of August, 2009 at Kansas City, Kansas.

-6-

                                      **s/ Carlos Murguia**
                                      **CARLOS MURGUIA**
                                      **United States District Judge**